IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Tony Stevenson Johnson, #300104, | ) | |
| | ) | Civil Action No. 6:09-1037-TLW-WMC |
| Petitioner, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| McKither Bodison, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

       The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

       Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

       The record reveals that the petitioner is currently confined in the Lieber Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of his Marion County convictions and sentence. The Marion County Grand Jury indicted the petitioner at the May 2003 term of court for murder, armed robbery, and possession of a weapon during the commission of a violent crime (03-GS-33-137). Attorney Clifford L. Welsh represented him on these charges.

       On February 23-26, 2004, the petitioner received a jury trial before the Honorable Edward B. Cottingham. The jury found him guilty as charged, and Judge

Cottingham sentenced him to life without parole (LWOP), a consecutive 30 years for armed robbery, and a consecutive five years for possession of a weapon during the commission of a violent crime.  The petitioner did not appeal his convictions or sentence.

On October 1, 2004, the petitioner filed a *pro se* post-conviction relief (PCR) application (04-CP-33-382) in which he alleged the following grounds for relief:

> (1)      Ineffective assistance of counsel in that trial counsel failed to conduct an appropriate legal and factual investigation, and counsel did not perfect an appeal; and
>
> (2)      Lack of subject matter jurisdiction because the warrants and indictments were defective.

The State filed its return on June 28, 2005.

The Honorable Paul M. Burch held an evidentiary hearing into the matter on June 13, 2006, at the Florence County Courthouse.  The petitioner was present at the hearing; and attorney Robert F. McMahan, Jr., represented him.  Assistant Attorney General Sabrina C. Todd represented the State.

The petitioner testified on his own behalf at the hearing.  The State presented the testimony of trial counsel, Mr. Welsh, and Edgar L. Clements, III, the Solicitor for the Twelfth Judicial Circuit.

On September 8, 2006, Judge Burch filed an order denying post-conviction relief dismissing the application with prejudice.  The order addressed the petitioner's claims that trial counsel was ineffective because he failed to (1) move for a change of venue; (2) object to certain portions of the solicitor's closing remarks; and (3) perfect an appeal for the petitioner.  The order also addressed his claims that the warrants and indictment against him were defective because they did not allege a time and place of death, and that his indictment was improper because it contained multiple charges on the same indictment.

The petitioner timely served and filed a notice of appeal.  Assistant Appellate Defender Robert M. Pachak represented him in collateral appellate proceedings.  On

May 3, 2007, Mr. Pachak filed a petition for writ of certiorari on the petitioner's behalf and petitioned to be relieved as counsel. He presented only one question in the petition:

> Whether the PCR judge erred in finding that petitioner was not entitled to a belated appeal?

The State filed a return to the petition for writ of certiorari on June 5, 2007. The South Carolina Supreme Court filed an order on January 9, 2008, in which it granted certiorari and directed the parties to brief the following direct appeal issue pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974), and Rule 227(I)(2), SCACR:[1]

> Did the trial judge err in refusing to grant a directed verdict on the charges of murder and armed robbery when the State failed to present any substantial evidence beyond a reasonable doubt of petitioner's guilt?

Thereafter, Mr. Pachak filed an *Anders* brief of appellant[2] pursuant to *White v. State* and petitioned to be relieved as counsel. The *Anders* brief of appellant addressed the issue as stated in the Supreme Court's January 9th order.

It appears from the record that the petitioner filed a *pro se* response to the *Anders* brief, and on December 8, 2008, the South Carolina Supreme Court filed a *per curiam* decision dismissing the petitioner's appeal and granting counsel's petition to be relieved. *State v. Johnson*, 2008-MO-050 (S.C. S.Ct., Dec. 8, 2008). It sent the remittitur to the Marion County Clerk of Court on December 29, 2008.

In his *pro se* petition for habeas corpus relief now before this court, the petitioner makes the following allegations:

---

[1] In *White*, the Court held that the petitioner's trial counsel should have made certain that the petitioner was fully aware of his rights and in the absence of an intelligent waiver of an appeal him, "either pursued an appeal in his behalf or else, if deemed appropriate by counsel, complied with the procedure set forth in *Anders*." 263 S.C. at 118, 208 S.E.2d at 39. "[I]n the absence of a notice of appeal having been given and timely served [the South Carolina Supreme] Court has no jurisdiction over such an appeal." *Id* at 119, 208 S.E.2d at 39. However, *White* established that the Court may review the direct appeal issue as part of its exercise of jurisdiction over the PCR appeal. *Id.* at 118-19, 208 S.E.2d at 39-40.

[2] See *Anders v. California*, 386 U.S. 738 (1967).

3

**GROUND ONE: TRIAL COURT ERRED IN FAILING TO GRANT A DIRECTED VERDICT.**

**SUPPORTING FACTS:** The State's case merely corroborated Petitioner's version of events, and the State failed to prove with sufficiency to sustain a verdict of murder, armed robbery and possession of a weapon.

The State failed to prove the case and the evidence doesn't support the verdict. The State Court should have revered the guilty verdict.

When the State failed to prove the crime beyond a reasonable doubt, Petitioner's due process rights are to be protected.

**GROUND TWO**: The State Court violated BRADY and denied Petitioner his constitutionally guaranteed right to a fair trial.

**SUPPORTING FACTS**: The State [withheld] the (VHS) video security tape from the convenience store and the tape would have corroborated Petitioner's version of events. The State's failure to reveal the tape violated Petitioner['s] due process rights that are protected under the Fourteenth Amendment.

**GROUND THREE: INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.**

**SUPPORTING FACTS**: Counsel failed to object to improper indictment, counsel was ineffective for failing to request [a] change of venue, counsel was ineffective for [failing] to object to the prosecution['s] improper closing.

On August 14, 2009, the respondent filed a motion for summary judgment. By order filed August 17, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his opposition to the motion for summary judgment on September 22, 2009.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or

applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

## ANALYSIS

### Ground One

In his first allegation, the petitioner claims that the trial judge erroneously failed to grant a directed verdict on the charges of murder and armed robbery because the State failed to present any substantial evidence beyond a reasonable doubt of his guilt, and the "State's case merely corroborated Petitioner's version of events." This was the only issue addressed by the state supreme court, which considered it in the context of a belated appellate review pursuant to *White v. State*, 208 S.E.2d 35 (S.C. 1974). The respondent argues that the state courts' rejection of the petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent. This court agrees.

Trial counsel moved for a directed verdict at the conclusion of the State's case (App. 479-80). The trial judge denied the motion (App. 480). Collateral appellate counsel summarized the prosecution's evidence, as follows:

Petitioner was tried for murder and armed robbery in the shooting death of James Dozier that occurred on January 3, 2003, as he was on his way to go hunting. The defense was one of involuntary manslaughter. Petitioner's own statement explained what happened on that fatal day. He was at a Sav-Way that morning and saw the victim drive up. Petitioner asked him for a ride. The victim said he would give petitioner a ride but not as far as he wished to go. Petitioner noticed the

6

> hunting guns and talked about them with the victim and asked
> if he could shoot one of the guns. The victim said he could.
> Petitioner stepped from the vehicle, loaded the weapon and
> tried to fire it. The gun clicked twice but would not fire.
> Petitioner stuck the gun barrel first, back in the vehicle toward
> the victim to do something with it to make it fire and the gun
> went off striking the victim (App. 26-27; 323-24; 386).

(Final *Anders* Brief at 5). The petitioner argued that the trial judge erred by refusing to grant a directed verdict because "[t]he State's evidence in this case did not show murder or malice but only involuntary manslaughter" (*id.* at 6).

The state supreme court, however, found that the motion was properly denied. Specifically, it found:

> In sum, James Dozier, III, the victim, was driving to meet
> friends to go hunting early one morning. Dozier stopped at a
> convenience store where Johnson approached Dozier and
> asked for a ride. After driving Johnson to a neighborhood,
> Dozier was fatally shot by Johnson using one of Dozier's
> hunting rifles. At trial, Johnson argued the shooting was
> accidental. The State presented evidence indicating Dozier was
> well-trained in gun safety and an avid hunter. Additionally, in
> statements made to the police, Johnson admitted to shooting
> Dozier, though he claimed the shooting was accidental.
> Following the shooting, Johnson took Dozier's wallet, moved
> Dozier's body, and took Dozier's truck. The jury was charged on
> murder, involuntary manslaughter, accident, armed robbery,
> and possession of a weapon during the commission of a crime.
> Based on the record before us, a jury question was presented.

(*Johnson v. State*, at 2. *See* App. 156-58; 180-82; 190-93; 255-59; 266-71; 278; 284; 287; 312-15; 321-26; 341-42; 369-72). The court therefore affirmed:

> pursuant to Rule 220(b)(1), SCACR, and the following
> authorities: *State v. Harris*, 351 S.C. 643,653,572 S.E.2d 267,
> 273 (2002) ("If there is any direct evidence or any substantial
> circumstantial evidence reasonably tending to prove the guilt of
> the accused, an appellate court must find that the case was
> properly submitted to the jury."); *State v. Pinckney*, 339 S.C.
> 346, 349, 529 S.E.2d 526, 527 (2000) ("In reviewing a refusal
> to grant a directed verdict, we must view the evidence in the
> light most favorable to the State and determine whether there
> is any direct or substantial circumstantial evidence that

reasonably tends to prove the defendant's guilt or from which
his guilt may be logically deduced.").

(*Johnson v. State*, at 2-3).

"'Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (citing *Wright v. West*, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the State's system of direct appellate review." *Id.* at 405-06 (citing *Wright*, 505 U.S. at 292). Therefore, a defendant is entitled to review only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted); *George v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. Also, a federal reviewing court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Further, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). *See also Jackson*, 443 U.S. at 318-19 ("[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'") (emphasis in original). Finally, when faced with evidence that allows conflicting inferences, this court must presume that the jury resolved such conflicts in the State's favor. *Jackson*, 443 U.S. at 326.

Applying this criteria to the case at bar, it is clear that the petitioner was not entitled to a directed verdict on the charges against him because, when the direct and

circumstantial evidence is viewed in the light most favorable to the prosecution, it cannot be said that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324; *George*, 100 F.3d at 357.

South Carolina has defined the crime of murder as the "killing of any person with malice aforethought, either express or implied." S.C. Code Ann. § 16-3-10. "Malice is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong. . . . It is the doing of a wrongful act intentionally and without just cause or excuse. . . ." *State v. Reese*, 633 S.E.2d 898, 902 (S.C. 2006) (citing *State v. Kelsey*, 502 S.E.2d 63 (1998) and *Tate v. State*, 570 S.E.2d 522 (S.C. 2002)).

The direct and circumstantial evidence presented at trial, as well as the reasonable inferences, must be viewed in the light most favorable to the prosecution. *Tresvant*, 677 F.2d at 1021. When so viewed, it is clear that a rational jury could have found proof of guilt for the crime of murder beyond a reasonable doubt. With respect to the element of malice, malice could be inferred from the circumstances surrounding the killing. *See State v. Watson*, 563 S.E.2d 336, 338 n.5 (S.C. 2002) (extreme recklessness can lead to an inference of malice); *State v. Mouzon*, 99 S.E.2d 672, 675 (1957) (malice may be inferred from an act so reckless as to manifest depravity of mind and disregard of human life).

"Robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear." *State v. Parker*, 571 S.E.2d 288, 289 (S.C. 2002). Armed robbery occurs when"[a] person ... commits robbery while armed with a pistol, dirk, slingshot, metal knuckles, razor, or other deadly weapon, or while alleging, either by action or words, he was armed while using a representation of a deadly weapon or any object which a person present during the commission of the robbery reasonably believed to be a deadly weapon." S.C. Code Ann. § 16-11-330(A). More specifically,

"[r]obbery is the crime of larceny accomplished with force, while larceny is the 'felonious taking and carrying away of the goods of another' against the owner's will or without his consent. Thus, asportation is an element of robbery and armed robbery." *State v. Keith*, 325 S.E.2d 325, 325-26 (S.C. 1985) (quoting *State v. Brown*, 260 S.E.2d 719, 720 (S.C. 1979)).

Here, the State's evidence and the reasonable inferences therefrom tended to create a jury issue as to whether the petitioner was guilty of armed robbery. While there is no evidence that the petitioner took the victim's wallet and truck before the victim's death, it is not essential the victim in an armed robbery must be alive when the robbery occurs. Rather, to be guilty of armed robbery in conjunction with a homicide, the State must prove the victim's death and the taking are part of a continuous chain of events so interconnected as to be inseparable. *See State v. Damon*, 328 S.E.2d 628, 631 (S.C. 1985), *cert. denied*, 474 U.S. 865 (1985); 67 Am.Jur.2d Robbery § 14 (2009) ("[A] taking from the body of one already dead is a taking 'from the person' if the death and the taking are so connected as to form a continuous chain of events."); 77 C.J.S. Robbery § 9 (2009) ("Although, as an abstract principle of law, one ordinarily cannot be guilty of robbery if the victim is a deceased person, this principle does not apply where a robbery and homicide are a part of the same transaction and are so interwoven with each other as to be inseparable. If the taking was made possible by an antecedent assault, the offense is robbery regardless of whether the victim died before or after the taking of the property."*). See also, e.g., Jones v. State*, 652 So.2d 346, 350 (Fla.1995), *cert. denied*, 516 U.S. 875 (1995) (finding violent murders and taking of victims' property were part of continuous acts and therefore supported robbery convictions); *Oglesby v. State*, 256 S.E.2d 371, 374 (Ga. 1979) (affirming trial judge's denial of directed verdict for armed robbery where defendant contended the taking of the victim's property did not occur until after the victim either was comatose or dead); *State v. Fields*, 337 S.E.2d 518, 524-25 (N.C. 1985) (holding, in a case

10

involving convictions for first-degree murder, armed robbery, felony murder, and second-degree burglary, "[a]ll that is required is that the elements of armed robbery occur under circumstances and in a timeframe that can be perceived as a single transaction"); *People v. Childs*, 615 N.Y.S.2d 972, 975 n. 3 (N.Y.Sup.Ct.1994) (discussing jurisdictions that have upheld robbery convictions concerning dead victims).

Finally, the petitioner was not entitled to a directed verdict on the charge of possession of a weapon during the commission of a violent crime.  The South Carolina Code provides:

> If a person is in possession of a firearm or visibly displays what appears to be a firearm or visibly displays a knife during the commission of a violent crime and is convicted of committing or attempting to commit a violent crime as defined in Section 16-1-60, he must be imprisoned five years, in addition to the punishment provided for the principal crime. This five-year sentence does not apply in cases where the death penalty or a life sentence without parole is imposed for the violent crime.

S.C. Code Ann. § 16-23-490(A).  *See also State v. Kirby*, 481 S.E.2d 150, 154 (S.C. Ct. App. 1996) (holding "that, as a matter of law, unlawful carrying of a pistol is not a lesser included offense of possession of a firearm or knife during the commission of a violent crime").  The evidence presented was sufficient to create a jury question on this charge as well.

Based upon the foregoing, the state supreme court was not objectively unreasonable under Section 2254(d)(1) in determining that the petitioner was not entitled to a directed verdict on these charges.  *See Jackson*, 443 U.S. at 324.  Accordingly, ground one fails on the merits.


**Ground Two**

In ground two, the petitioner alleges that the prosecution violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), when it supposedly withheld

a VHS "video security tape from the convenience store and the tape would have corroborated Petitioner's version of events." The respondent argues that the petitioner has procedurally defaulted on this allegation by not perfecting the issue in the trial court, and by failing to raise it and obtain a ruling thereon in State PCR as either a substantive allegation or an ineffective assistance of counsel claim. The petitioner argues that the claim is not procedurally defaulted because he raised it in his *pro se* response to the Final *Anders* Brief (pet. resp. m.s.j., ex. A at 1). The court will assume for purposes of this motion that the claim is not procedurally barred and will examine the claim on the merits.

In a pretrial motions hearing, the Solicitor stated that he had provided the petitioner's trial counsel with every piece of evidence that was "subject to disclosure under our Rule 5[, SCRCrimP,] and *Brady v. Maryland*." Also, the State had exercised due diligence to insure that he hd disclosed all evidence was subject to disclosure, and he had made his available for trial counsel's review. When asked if the petitioner had any discovery motions under Rule 5 or *Brady*, trial counsel said "that's kind of like answering a negative, Your Honor. As far as I know he's given me everything" (App. 2-3).

The petitioner's allegation apparently references a videotape from a Sav-Way convenience store. Lt. Farmer Blue of the Marion Police Department testified that he found a Sav-Way bag in the victim's car containing food that had not been completely eaten. (This was represented by a photograph, State's Exhibit 22, that was admitted without objection.) He thought that this could be "significant because I knew that . . . there was a possibility that the victim had just came from Sav-Way and that Sav-Way would have a video tape of that incident." Law enforcement followed up with Sav-Way as part of the investigation. The petitioner's trial counsel did not object or claim a *Brady* violation had occurred (App. 240-41).

Leslie Ann McCollough, an employee of the Sav-Way Store in Marion, testified at trial that she was working as a third shift clerk on the morning of January 3,

2003. She remembered that the victim came into the store that morning and purchased something from the kitchen. This was between 4:00 and 4:30 a.m., which was before the normal "breakfast crowd." Only one other customer was present, and she did not remember anyone outside the store. As the victim was leaving, she saw the petitioner approach the victim's truck and the two men began a conversation. She assumed that the petitioner was asking the victim for a ride because the petitioner got into the truck, and the victim drove away from the store (App. 264-71).

Ms. McCollough testified that the store has a video surveillance camera that shows people that come into the store but not the parking lot. She reiterated that the petitioner did not come in the store, so he would not have been on the video. She had spoken to law enforcement about what she had seen that morning. Again, the petitioner's trial counsel did not object or claim a *Brady* violation had occurred. He merely reemphasized that the videotape would show who had come into the store (App. 271-75).

Another witness, Chris Godbolt, saw the petitioner using a telephone outside of the Sav-Way that morning. The petitioner tried to "bum" money from Godbolt. The petitioner also asked another person for money and a ride. He testified that the petitioner never went into the store. Godbolt later saw the victim arrive in a truck. They spoke and then Godbolt and the victim went into the store. The victim bought food, paid for gas, and left (App. 287-92). While the victim was in the store parking lot, the petitioner approached him, and both men got into the victim's truck, with the petitioner on the passenger side. This was sometime between 4:30 and 5:00 a.m. (App. 292-95).

When asked at the PCR hearing about the security tape from the convenience store, trial counsel testified that he "remember[ed] talking about the tape, and I think that might have been a discussion I had with the State about evidence and I don't remember what the outcome of that was. I mean, I remember that being something I obviously thought about because of, you know, you can't go into a Quik Shop without being

13

videotaped but I don't remember what the outcome was." However, he also testified that there was no dispute between the State's version and the defense's version of what happened at the store (App. 599-600; 608-09). Thus, it is reasonable to conclude that the tape was not important to the defense.

The Solicitor retook the stand to clarify a portion of his earlier testimony. In pertinent part, he testified that the videotape from the convenience store did not show the area where the petitioner and the victim had talked. Also, the store had reused the tape by the time law enforcement obtained it because the store "kept using the same tape over and over again." Further, according to the Solicitor's testimony, he thought that the camera recorded only what went on at the counter where the register was, so he did not believe the video would not have had anything of evidentiary value even if it had not been taped over. According to the evidence presented, law enforcement never had access to a video that depicted the petitioner and the victim's conversation (App. 610-11).

In *Brady v. Maryland*, 373 U.S. 83, 87 1963), the Supreme Court "held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, 'irrespective of the good faith or bad faith of the prosecution.'" *Cone v. Bell*, 129 S.Ct. 1769, 1772 (2009). The evidence before the court showed that the videotape, even if it had not been taped over, was not material to the petitioner's guilt or punishment. The evidence revealed that the tape, even if had not been taped over, did not show the conversation between the petitioner and the victim. Further, even if the tape had shown that conversation, there was no dispute between the State and the defense as to how and where that conversation took place, nor was there any dispute that the petitioner got in the victim's truck and rode away with him. Based upon the foregoing, the petitioner's claim of a *Brady* violation fails on the merits.

***Ground Three***

In ground three, the petitioner raises three separate allegations of ineffective assistance of trial counsel. Specifically, he alleges that trial counsel was ineffective because he failed to object to an improper indictment,[3] he failed to request a change of venue, and because he did not object to the prosecution's allegedly improper closing argument.

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

**Improper Indictment**

The petitioner alleges that his trial counsel was ineffective for failing to object to an improper indictment (petition at 8). At the PCR hearing, the petitioner testified that he believed the indictment was defective because it did not have the time and place of the

---

[3]The respondent mistakenly refers to petitioner's claim as an objection to improper "impeachment" rather than "indictment" (resp. m.s.j. 5, 23-24).

victim's death.  He also complained that all three charges were on one indictment and that the sole witnesses before the Grand Jury were two police officers (Tr. 576-77).

On September 8, 2006, Judge Burch filed an order denying PCR and dismissing the application with prejudice.  The order addressed the petitioner's claims as to the indictment and found as follows:

> The Applicant contends the warrants and indictment against him were defective because they did not allege a time and place of death.  Based on the record including the testimony at the PCR hearing, this Court finds he understood that what he was accused of doing, leaving the victim dead in Marion County after shooting him.  Thus this Court concludes the due process requirement of a charging document putting the Applicant on notice of the allegations against him was satisfied.  *State v. Smalls*, 364 S.C. 343, 613 S.E.2d 754 (2005) (holding an indictment is a notice document necessary to satisfy our state statutes and constitution as well as due process); *see also Winns v. State*, 363 S.E.2d 901 (2005) (holding indictment that listed the date and location of a murder was sufficient where the logical reading of the indictment, including an allegation the victim died as a proximate result of the blows to the head inflicted by the defendant, was that the victim died at the time and place of the crime).
>
> The Applicant also contends his indictment was improper because it contained multiple charges on the same indictment.  However, "[c]harges can be joined in the same indictment and tried together where they (1) arise out of a single chain of circumstances, (2) are proved by the same evidence, (3) are of the same general nature, and (4) no real right of the defendant has been prejudiced."  *State v. Harris*, 351 S.C. 643, 652, 572 S.E.2d 267, 272 (2002).  The Applicant has made no such showing his multiple-count indictment was improper.
>
> Finally, the Applicant contends his indictment was improper because only law enforcement officers served as witnesses before the grand jury.  Although it is improper for the prosecutor to be the sole witness in a proceeding before the grand jury, *State v. Anderson*, 312 S.C. 185, 439 S.E.2d 835 (1993), this Court is aware of no case applying that rule to law enforcement.
>
> For these reasons, this Court concludes the Applicant's allegations regarding the warrants and indictment in his case are without merit and he has failed to meet his burden of

> establishing his prosecution was improper on these grounds or
> that counsel was ineffective in failing to challenge his indictment
> or prosecution on these grounds.

(App. 622-23).

This issue is not cognizable in federal habeas corpus. Federal habeas is unavailable to retry state issues. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1989). A state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter cognizable in federal habeas corpus. *See Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (citing *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976)). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."); *Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985) (deficiencies in state court indictments are not ordinarily the basis for habeas relief unless deficiency made trial fundamentally unfair as to amount to a deprivation of the defendant's right to due process). There is no indication here that any alleged defect in the indictment made the petitioner's trial so fundamentally unfair as to amount to a deprivation of his right to due process. Based upon the foregoing, this claim fails.


**Change of Venue**

The petitioner testified at the PCR hearing that his case was highly publicized, and he thought that trial counsel should have moved to transfer venue. Trial counsel had told him that counsel believed that a transfer of venue would be a bad idea because it would make it more likely that the State would seek the death penalty (App. pp. 575; 578-79; 583).

17

Solicitor Clements testified that he had "a faint recollection that I might have discussed [publicity in this case] with [trial counsel] some" (App. 589). However, he did recall that they

> talked about the possibility of trying to change venue on a move by the State, the reason being is because I really would have liked to have pursued the death penalty against Mr. Johnson and the family would have liked for me to pursue the death penalty against Mr. Johnson, but in Marion County I do not believe that I could have gotten a death penalty. I knew that I had enough evidence that I was very confident trying this case in any county in the State of South Carolina and getting a conviction. What I did not think I could get was a death penalty in Marion County. I wanted to have that opportunity, but I also know that by state law -- I think *State versus Manning* before you can move for a change of venue you have to have a jury venire present, they have to be queried by a judge to make sure that they have not been tainted, and you have to not be able to pick a jury in the county that the case has arisen. That did not happen. We didn't think there were sufficient grounds for making that motion on behalf of the State so we didn't do so. We didn't think we'd prevail, and we didn't want to make a motion that we felt like we didn't have legal grounds to do so. I may have discussed that with Mr. Welsh. It seems like I have some vague recollection of that, but I cannot recall that absolutely, but I would have loved to have had a change of venue.

(App. 590). He reiterated that there was "a very strong probability" that he would have sought the death penalty if the defense had successfully moved for a change of venue (App. 590-91).

Trial counsel testified that it was his belief that the Solicitor was hoping that he would move for a transfer of venue. Counsel thought that the Solicitor was not seeking the death penalty because the crime occurred in Marion County, and the Solicitor did not think that he could get a recommendation of death from a jury in Marion County. As a result, trial counsel did not want a change of venue. He was trying to save the petitioner's life, and he did not think a change of venue motion would be wise because he thought if the venue were changed, the Solicitor would seek the death penalty (App. 600-01).

The PCR court found:

> [T]rial counsel offered a legitimate, logical reason for his decision to not seek a transfer of venue - that he wanted to prevent the State from seeking the death penalty. the State did not serve notice of intent to seek the death penalty in this case and this Court finds that the venue of Marion County played a significant fact in that decision. It is quite likely the State would have sought the death penalty had the case been transferred to another county. Because trial counsel articulated a valid strategic decision for his decision [not to move for transfer of venue], this Court finds and concludes the Applicant has failed to establish that trial counsel was ineffective. *McLaughlin v. State*, 352 S.C. 476, 575 S.E.2d 841 (2003).

(App. 623).

The Supreme Court recognized in *Irvin v. Dowd*, 366 U.S. 717, 722 (1961), that "in these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." Further, "'[t]he relevant question is not whether the community remembered the case, but whether the jurors ... had such fixed opinions that they could not judge impartially the guilt of the defendant.'" *State v. Tucker*, 478 S.E.2d 260, 266 (S.C. 1996) (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984)). The petitioner had the burden to produce evidence of pretrial publicity, *Austad v. Risley*, 761 F.2d 1348, 1354 (9th Cir. 1985), and he did not meet his burden because he did not present any evidence to support this allegation in state court.

The petitioner's trial counsel offered a legitimate, logical reason under *Strickland* for his decision to not seek a change of venue. He wanted to prevent the State from seeking the death penalty. The testimony of the Solicitor supports the PCR court's finding that the strategy was sound and ultimately worked because the Solicitor did not seek the death penalty. Based upon the foregoing, the petitioner has not shown that his trial

counsel was deficient in this regard and that he suffered prejudice as a result of his counsel's ineffectiveness.

## Solicitor's Closing Argument

Lastly, the petitioner contends trial counsel was ineffective in failing to object to certain portions of the Solicitor's closing remarks. The passages in question are as follows:

> (1) Which one of y'all would tell somebody, "Yeah you can shoot the gun" (App. 510).
>
> (2) Which one of you would sit there and let somebody put a gun muzzle right in your coat and say, "This thing ain't working," and reach over and cut off that safety? You wouldn't, and I wouldn't and James Dozier, an avid and safe hunter who passed the Hunter Education Course certainly wouldn't do it (App. 524).
>
> (3) And James, his blood cries out for justice in this case. Don't let him be drug off like he was drug away from that truck and left for dead; no ambulance called; no mercy shown. No sympathy shown. Nothing other than, "How can I cover this up?" (App. 525).

The petitioner argues that the first two passages were too personal and constituted a "Golden Rule" argument. The petitioner argues that the third passage was inflammatory.

The Solicitor testified at the PCR hearing regarding the challenged passages in his closing argument. He testified that in the first passage (App. 510) he was attempting to call on the jurors' common sense and attempting to give the jurors a whole picture of the crime. Regarding that passage and the other passage referencing how the petitioner contended that the shooting took place (the second passage, App. 524), the Solicitor testified he was trying to (1) point out that the petitioner's explanation of how the shooting occurred was ludicrous and (2) convince the jury that it did not happen that way. He denied

20

that was not trying to put the jurors in the victim's shoes.  He testified he was attempting to do the same thing in the other challenged passages.  He specifically testified that he did not believe he had made a "Golden Rule" argument "because the victim did not do the actions he described.  He testified, "It would have been a violation of his common sense or anyone else's to take someone in a neighborhood and shoot a gun in the wee hours in the morning before daylight.  It would have been a violation of anyone's common sense to reach across with a barrel pointed at their chest and cut the safety off so that is why I did not believe that I was putting jurors in the victim's shoes because the victim or no one else would have ever done that.  So to me that was just not a reality but a fantasy" (App. 591-97; 609-10).

The petitioner's trial counsel testified at the PCR hearing that he did not think that he needed to object to the Solicitor's closing remarks as he did not find them improper.  Further, his trial strategy included not objecting much because he did not want the jury to believe he was hiding anything:  "quite frankly, you know, we were trying this case on one issue. I was trying to stay in my chair as much as humanly possible because I didn't want the jury to think we were trying to hide something."  He added that "we were trying to be right out front that we felt like it was an accident and that was our case and that was our story and we were sticking to it because quite frankly the defendant had [sounded] confused at great length orally and on video so it wasn't like the jury hadn't heard his side of the story" (App. 603-604).

The PCR court found as follows with regard to the first two passages:

"A Golden Rule argument asking the jurors to place themselves in the victim's shoes tends to completely destroy all sense of impartiality of the jurors, and its effect is to arouse passion and prejudice." . . .  Reading these passages in the context of the solicitor's entire closing remarks, it appears he was attempting to convince the jury the Applicant's version of events - that the victim agreed to let the Applicant shoot his rifle in a populate area, allowed the Applicant to point the weapon at him after the Applicant was unable to fire it, and reached to take the safety off while the firearm was pointed directly at him and the

> Applicant's finger was on the trigger - was unbelievable. This Court finds and concludes the solicitor was not asking the jurors to put themselves in the victim's shoes, but rather was calling on their common sense to reject the Applicant's version of events. Therefore, this Court concludes trial counsel was not deficient in failing to object.

(App. 624) (citation omitted).

> With respect to the third passage, the PCR court found:

> Although the solicitor made an impassioned plea for justice for the victim, his comments do not invite the jurors to reach a decision on anything other than the evidence presented to them. Although they may be difficult to hear, the comments reflect the solicitor's version of the evidence of what the Applicant did after shooting the victim. Therefore, it was not incumbent on trial counsel to object.

(Tr. 625).

The court went on find that the petitioner failed to establish prejudice related to his trial counsel's failure to object to any of the challenged comments: "Here, upon review of the entire record, this Court finds and concludes the convictions were not the result of the denial of due process caused by the solicitor's remarks, nor is it likely the result of the trial would have been different had counsel objected to these remarks" (App. 625) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

The United States Supreme Court has made clear that a petitioner is not entitled to relief based upon the closing argument of a prosecutor, unless that argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly*, 416 U.S. at 643. The standard in *Donnelly* is a very high standard for a defendant to meet. "'[I]t is not enough that the remarks were undesirable or even universally condemned.'" *State v. Tubbs*, 509 S.E.2d 815, 818 (S.C. 1999) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must

also take into account defense counsel's opening salvo." *United States v. Young*, 470 U.S. 1, 12 (1985).

In *State v. Durden*, 212 S.E.2d 587 (S.C. 1975), the state supreme court set forth examples of permissible closing arguments by prosecutors:

> "So long as he stays within the record and its reasonable inferences, the prosecuting attorney may legitimately appeal to the jury to do their full duty in enforcing the law, or to return the verdict which he conceives it to be their duty to return under the evidence, and it may employ any legitimate means for impressing on them their true responsibility in this respect, as by stating that a failure to enforce the law begets lawlessness. Thus, he may in effect tell them that the people look to them for protection against crime, and may illustrate the effect of their verdict on the community or society generally with respect to obedience to, and for enforcement of, the law; he has the right to dwell on the evil results of crime and to urge a fearless administration of the criminal law; and he may ask for a conviction, or assert the jury's duty to convict. He may argue with reference to any matter which the jurors may properly consider in arriving at their verdict, and may point out as well the matters which they should not consider."

*Id.* at 590 (quoting 23A C.J.S. Criminal Law s 1107).

Applying these standards to the comments at issue here, the respondent argues that the solicitor's comments did not so infect the trial with unfairness as to make the resulting conviction a denial of due process under *Donnelly*. This court agrees.

As argued by the respondent, the first two challenged comments did not constitute a Golden Rule argument. In a Golden Rule argument, jurors are urged to place themselves in the position of a party, a victim, or a victim's family member and decide the case from that perspective. *Von Dohlen v. State*, 602 S.E.2d 738, 743-44 (S.C. 2004). Rather than urging the jury to subjectively analyze a case solely or primarily from the victim's viewpoint as in *Von Dohlen*, the Solicitor was merely reminding the jurors of the absurdity of the petitioner's explanation for his actions – i.e., that his actions defied common sense. The petitioner also cannot show that any impropriety in the Solicitor's closing

23

argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. "[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647. Further, trial counsel testified to an objectively reasonable strategy for not objecting. Therefore, the petitioner failed to satisfy his burden of proving deficient performance or prejudice under *Strickland* as to these comments.

Likewise, the petitioner did not meet his burden of proof with respect to counsel's failure to object to the third comment. Particularly in light of the overwhelming evidence of guilt, the petitioner cannot show how the comment so infected the trial with unfairness as to make the resulting conviction a denial of due process under *Donnelly.* As found by the PCR court, the comment reflected the State's version of the evidence of what the petitioner did after shooting the victim, and the Solicitor asked the jury to return the verdict he conceived it to be their duty to return under the evidence. Furthermore, trial counsel testified to an objectively reasonable strategy for not objecting.

Based upon the foregoing, ground three fails.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 22) be granted and the petition be dismissed.

s/William M. Catoe
United States Magistrate Judge

February 10, 2010

Greenville, South Carolina